Mr. Vantel, you have reserved 2 minutes for rebuttal, so that gives you 8 minutes to start. You may proceed. Thank you very much. Good morning. Peter Vantel from the Appellate Court of Whittingham. In this case, the government is seeking to circumvent... Could you lift up so you're speaking into those? Yes. Is that better, Your Honor? It's better. You're tall, and so... You can hit the button. The button will raise the lectern. Oh, thank you very much. Thank you, Lieutenant. I appreciate it. How tall are you? Only 6'2", Your Honor. 6'2", that's nothing. As I say, this is a case where there are vital protections that Congress and the Supreme Court have given to naturalized citizens. The government has to prove beyond a reasonable doubt that a crime here occurred during a certain time period. That kind of showing is not susceptible to the device that the government chose to use, which was judgment on the plea. But, I mean, why isn't the judgment itself a document on which the court can take judicial notice? That judgment, Your Honor, the issue with it is that in that trial, the timing of the crime was not an issue. No, no, but the jury was charged in the original one that while there might be evidence from a different time, they had to find that it was during a particular time. Wasn't the jury charged specifically that it had to happen between 2025 and February 2206? It was slightly different, Your Honor. They were charged with, you may find that it occurred approximately. In or about, right? In or about. They were directly constructed by the judge. They did not have to focus on the exact time, and that's the issue. But there's no evidence in the trial record at all of any act that postdates the naturalization in May, right?  Well, there's one that's close, but, you know, horseshoes and hand grenades. I mean, the fact is there's nothing in the record, period, that puts an act outside of the relevant date. Is that correct or incorrect? I think it's incorrect, Your Honor. Why so? For two reasons. One, we don't have the whole record. We only have the record that was presented to me by the government's counsel. My client does not have all the exhibits. Well, but the trial record. I'm talking about the transcript. We have the transcript. We have the transcript, Your Honor, but the trial record consists of hundreds of exhibits, and I didn't get all the exhibits. And there is an exhibit 612, and the citation is J855556, where there's a reference to April 2006 activity. Right, but that doesn't matter, right? That's before the naturalization. I agree, Your Honor, but it doesn't sense that it shows that it is not off-front loaded to some earlier period. They're very welcome in post-May 2006 activity. And I suppose what I would say, Your Honor, is what's the harm in letting me inquire about that? In other words, I'm not asking this court to say that Ms. Williams' citizenship shouldn't be revoked. I'm asking for a chance to get some evidence and see, either on summary judgment or at a bench trial like in Nunez, whether it should be revoked. In other words, when you're talking about beyond a reasonable doubt, you shouldn't be relying on a cherry-picked record from the government where I haven't gotten the evidence that normally one would have. But we do have a judgment that lists the dates, the end date for the criminal conduct, right? We do, Your Honor, but again, that is based on an instruction where— All right, but it sounds like you're challenging the judgment at this point, then. I'm not challenging the judgment, Your Honor, nor am I challenging Ms. Whittingham's guilt. I'm challenging what the judgment was based on, which was an approximation of a time period. In other words— Yes, but if even in an approximation a jury finds X, aren't we then bound in a civil case to say that X is X? Even though a jury might have found something else. And even though if you had a chance to go further, you could have said, gee whiz, the jury should have found something different. I think that's the point, Your Honor. If that were an issue in the case, counsel would have had an incentive to say let's find a different time period. The exact end of Ms. Whittingham's activities was not an issue in the case. And the case law says where you're in that situation, you can't take judicial notice of the judgment because it is— So let me—maybe I can ask the question a different way. So you want us to remand this case for further proceeding, for discovery, for summary judgment briefing. Other than this Exhibit 612, what else do you think you will show? Oh, Your Honor, I believe that's the tip of the iceberg. I mean, there are literally hundreds of exhibits, and the government's relying on a dozen. I mean, there could be records showing that Ms. Whittingham's involvement began after May 2006, that the conspiracy was ongoing and that she joined it. That is not beyond the realm of possibility. That's the kind of thing. But it's—I'm in a difficult situation because it's—I don't know what I don't know. But you don't have access to your client. I have access to my client. She doesn't have access to the records. And her memory is—she doesn't remember, Your Honor. This was 2006. It was now 17 years ago. I immediately asked my client what she recalls, and she said, I don't know. So the issue is, Your Honor, where you have a denial of a key fact, as we do in this case, it then takes it out of the realm of possibility. Wouldn't that be always the case where there was a criminal finding, which then is being used in a civil thing as denaturalization, that you could say that the criminal finding may have been based on things which we don't know about so that you would never get the kind of collateral estoppel from a criminal finding? Because under your argument, we could always have at least the right to go and look further. Am I wrong in that? I mean, that might be a sensible thing to do, but is that what our law is? You're not wrong, Your Honor, but it raises an excellent point that distinguishes this case. In the cases where the government typically moves for denaturalization, there is a criminal plea. A guilty plea, an allocution where a defendant stands up and says, yes, I did it, yes, I did it before May of 2006, et cetera. This, in my experience in these cases, is a very rare case that went to trial and the government is relying on a conviction, on a jury finding. The government has not cited a single case where such a thing has happened. Yeah, but a guilty plea would have just probably said what was in the indictment, right? It would have just said between X date and Y date I engaged in this criminal activity. You could have still made the same argument that, oh, well, it was in or about. I think there would be collateral estoppel, Your Honor, in the cases, say, where the defendant stands up and says, I plead to X. I would commend the court to the Nunez case as an example. Mr. Nunez had a denial of the date, and he said, I can't really recall. It could have been X or Y date. Judge Block, the judge here, said, that's enough to take you out of the round of judgment. Well, and that's, you know, it is interesting that it is the same judge in Nunez and here. And in Nunez, he said, well, there may be room, so let's look. And here he says, given what I said to the jury, I don't think there is room. Now, even judges can be wrong in contradicting themselves, but it's kind of interesting. I see that I'm out of time, Your Honor, but I agree. And in that case, there was a bench file, which we suggest would be appropriate. Thank you. All right. We'll now hear from Ms. Soloveitchik. Am I saying that right? Yes, Your Honor. Good morning. I am Ms. Duskley. We'll lower this thing a little bit. Okay. Good morning. My name is Ms. Soloveitchik. I'm the Assistant United States Attorney in the Eastern District of Newark. I represent a plaintiff appellee in the United States of America. The district court correctly concluded that the defendant had illegally procured her naturalization, and as much as she failed to satisfy the statutory prerequisites, and she had not been entitled to receive that naturalization when she received it in May 2006, the government respectfully submits this court to affirm the district court's judgment revoking her naturalization under ABS 1454. Well, I guess the point Mr. Vantol is making is that this shouldn't have been a 12C motion. It really should have been a summary judgment motion. There might have been just a tiny bit of discovery that would have allowed him to look at the exhibits. I don't think Mr. Vantol is suggesting that he gets to introduce new evidence in the form of, you know, like alibis or things like that. But what is the reason to go do this, by the way, a motion for a judgment on the pleadings as opposed to a summary judgment? Yes, Your Honor, it's very straightforward here. And these were crimes that are not in a vacuum. They're not unmoored from events. And it's very important to understand the nature of the crime in the trial transcript. In fact, the Honorable Rosalyn Mousetrump originally had this case in her original promotion conference, which is, in the record, specifically said that she can't recite that in our brief, that may be more complicated than a plea allocation, which is sort of pulling out the relevant facts in a sort of short synopsis. But the information is there. But I think opposing counsel is making an argument and saying that where you have denaturalization based on a finding of guilty by a jury, by a jury, it should not be done without summary judgment, without judgment. It has to go beyond 12B6. And that is because we don't know what is going on, and denaturalization is important. Now, that's asking for new law, but it's not crazy to say, gee, let the district courts take a little bit more time when you're dealing with this kind of case. Yes, Your Honor, I appreciate your question. I understand it. But respectfully, I don't think that that's the case here. This was, everyone agrees, including defendant's criminal counsel, as stated in his opening of the trial and also in his brief to this court on that appeal that affirmed the judgment there, that this was an account takeover scene. And the sole question really was, was she the insider who provided the information to hijack the accounts, the personal information that was needed, the transaction history, the addresses, the Social Security numbers? So the focus that we need to look at is the 22 victimized individuals. And those 22 victimized individuals testified either in writing or in person at the trial about when their addresses were changed, that they didn't change their accounts, the transfers were made, that they didn't seek, the checks were ordered, that they didn't ask for, that the checks were signed, not by them, to faiths whom they did not know. All of that is already in the record. And all of that, Your Honor, is from October 2005 to February 2006. That's the criminal transcripts starting at page 480. There's 19 individuals there. There's also three additional individuals who testified in person. And that is the reason why the summary exhibit at the joint appendix, page 885, is so helpful because it pulls together all that information, but the information is already in the record, in the trial transcript, and it pieces together that fact that you have these 22 individuals who have had their accounts victimized at a specific point in time. Look, all of that is pretty compelling. I think the thin reed that Mr. Vantol is clinging to is that he doesn't have all the exhibits. And so I guess I'd like to hear you respond to that argument. Yes, Your Honor. The only reason why we put in the summary exhibits was because we thought it was a helpful way of pulling together information. The defendant had a criminal counsel. There's no reason she can't go back to that criminal counsel and secure that stuff, but she didn't keep it. But more importantly, Your Honor, the trial transcript itself provides adequate information. There's no dispute, even on appeal. The criminal defendant's criminal counsel did not sustain how the fraud occurred. None of that was disputed. In fact, the record reflects that she began to work in Bank of America in 2003, so very importantly, the relevant period here is from January 23, 2001, five years before her naturalization application. That's undisputed. And the end date would have been the date of her naturalization certificate. That is May 12, 2006. And she began to work at Bank of America in 2003. And it's very interesting because the very situation that my colleague, who Ross Garrow, pointed to that relates to April 2006 information is used in the transcript by Ms. Whittingham's own counsel to say that she was not the person because she was being framed, that someone who was not her had called up the Bank of America and provided that information. That's in TR, the criminal transcript, pages 730 and 731. So it's a little unusual here for counsel in the civil trial now to say that that establishes she was still acting after the events with regard to these 22 account holders. It makes no sense, and it's notable that despite the fact that the complete hundreds of pages of trial record is in the record, was in the record in district court, was in the record in the criminal case, and is in the record here, there's no indication in that criminal trial transcript of anything that would underline this specific course of events. This is a pretty specific mechanism. I think I get all that, and my questions probably reflect that, the ones I asked of Mr. Vantall. But I guess here it's a 12C, right? So all the things that you're relying on are documents that are things we can take judicial notice of. Is that what you're saying? Yes, Your Honor. So judicial notice of the judgment? Yes. Judicial notice of the indictment? Yes. Judicial notice of the trial transcript? Yes, Your Honor. Okay. I couldn't find a lot of cases on this. It doesn't come up too often, but a situation where the trial transcript of a different proceeding is something which a court has taken judicial notice of. Do you have a case for that? Well, Your Honor, there certainly are cases not in the denaturalization context. There are certainly cases saying that trial materials, including transcripts, can be taken notice of under 12C on judgment under pleadings context. The government cites some of those cases at pages 23 and 24 of its brief. But I think more importantly here, Your Honor, the criminal defendants counsel in her communications to this court on appeal admitted that she—and part of the reason why he was saying at page 730 of the transcript, which I alluded to earlier, that it could not have been her, is because she had already been terminated from her employ. And her job is the insider, so what exhibit magically is going to have her have begun to work at Bank of America before 2003, the fact that she is serving under penalty of perjury in her denaturalization application, or contravene her own criminal counsel, who is communicating about when the fraud ended. And he repeats that in his appeal papers here. So I think rather than talk big picture about what generally might be the case, when you drill down here to what the communications were with the court, what position of the case, it's pretty clear that there is no possible way that her job as an insider accessing Bank of America personal information could have been outside of that period. So can I—I want to ask—this was something that was implicit in the question that Judge Sullivan asked you. We have said a number of times in a number of settings that indictments don't have an evidentiary value. They indicate that somebody was indicted, but they don't have—so how is it that we have to be creating new law to say that there's something we need to take judicial notice of here? We just parenthetically say, as well, the government also has an argument that those two documents may also be referred to in the incorporation by reference doctrine. They were referred to in the government's complaint. But just speaking directly to the question that Your Honor referenced, the facts of the conviction and the fact that the conviction— I think the stronger argument is that the conviction is enough. Do we need to reach new law by saying that the trial materials or the indictment is something that we should be taking judicial notice of? The government submits that the judgment of conviction and the superseding indictment are sufficient. Okay, but the indictment—do we need to create new law to say that we can take—how does your position, that we should take judicial notice of the indictment square with our doctrine that says it has no evidentiary value? Is that a fight that you are prepared to fight today? Well— Why? Why? Why not just say the conviction is enough? I mean, we do have a conviction on something which would put it within the period. Why get into all this other stuff of what might come in or what might not come in? I agree, Your Honor, and I would respectfully note, Your Honor, that with regard to the 19 individuals, the criminal defendant in the criminal case herself signed a stipulation. Signed a stipulation that says that this is what these witnesses were testified to, and  so it's not clear that it's about necessarily the trial transcript, but you can take judicial notice of something that—Mr. Gentile asked earlier what is the harm of going back to district court and redoing this. Is the plan to re-depose those 19 individuals and the other 3 individuals and find out what dates and redo the parts of the criminal trial? I would also note, Your Honor, two very important things. One is that, in this case, Ms. Whittingham has set in the record, under penalty of perjury, and I refer here to page JA38 of the record of footnote 1, that she does not recall when this—when this—when this trial that she committed— But again, you're getting us into all sorts of things in which we might have to make new laws to what comes in that might get us in trouble in other cases. Why don't you just say there is a conviction and the conviction had to be for a particular time and that that's enough? I would agree with that, Your Honor. Well, it would seem to me that the indictment might be evidence not—it's not something that the fact finder at trial can consider as proof of anything, but it would be evidence as to what the conviction is for. Really? And so the time limitations are in the indictment. They're alluded to in the judgment, but it's not clear to me that this is new law exactly with respect to considering an indictment for what the indictment charges. I would agree that it's not new law, Your Honor. I would note that the judgment and conviction at, I believe, JA1039 refers to February 2006 as the end date. And again, this—that is consistent with what the criminal counsel for Ms. Whittingham— But I'm just worried about the indictment, because as I read it, if we were to only look at the indictment, and because it uses that honor about language, then in theory something could have occurred three months after February 2006, which is outside the good moral character statutory period. Right? So, like, I think—no. Tell me why. Thank you, Your Honor, for that question. And the answer is because she was the insider who was figuring the 22 defrauded victims. This crime occurred to 22 victims, and no other victims are the subject of this crime. That is the crime on which she was convicted. And the lab ending, the final check that was signed by someone who wasn't the person who paid, who the person didn't recognize after the transfer and the dress changes and all that, that was in February 2006. Where is her— Well, but that's why the indictment itself isn't enough, right? Because the honor about language allows for some time after February 2006. I mean, that's why I just—OK. Go ahead. So, that, Your Honor, and I just—the reason why we got to the question of the trial transcript is because it—my colleague, Oprah Scott, had mentioned in his initial remarks that the jury charge referenced honor about language. So that's coming from the trial transcript. If we're going to look for the trial transcript to cast doubt on the end date that's set forth in the judgment and conviction, then what is the argument for not including the other parts that establish the circumstances in which this fraud occurred? And it's—I also want to push back on a few other things. Mr. Bantul mentioned that Núñez was a bench trial. Núñez was not a bench trial. It's simply—I'm not going to be speaking on this part. And I just, again, refer to the fact that separate and aside from the issue of incorporation by reference or judicial notice, Ms. Whittingham signed a stipulation—signed a stipulation saying when 19 of these individuals experienced a fraud that she instigated by providing the information to contact their accounts. So— All right. Well, we're—I think we're way over at this point, but we have your brief, so thanks. Thank you, Your Honor. Mr. Bantul, you have two minutes for rebuttal. Thank you, Your Honor. I want to return to the point about whether or not there would be new law being made here even if you relied only on the October 2008 judgment. The fact is you would. Under the global network case from this court, there's a holding that such documents outside the record can come in, but they cannot come in for the facts asserted in that other proceeding. In other words, the fact that a judgment existed can come in but not the underlying facts. And the government only cites courts—cases to this court that involve either a summary judgment motion or, as I alluded to earlier, admissions on the guilty plea. So if you rely on the indictment or if you rely on the October 2008 judgment, you would in fact be making new law. If you went further and relied on a trial transcript and trial exhibits, you would be—